UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE MAURICE STARKS,

Plaintiff,

v.

CURTIS HOSKINS et al.,

Defendants.

Case No. 1:25-cv-19

Honorable Paul L. Maloney

# OPINION

This is a civil rights action brought by Plaintiff Jermaine Maurice Starks under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court on a motion for summary judgment filed by Defendants. (ECF No. 21.) For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and dismiss this action with prejudice.

## Discussion

### I. Factual and Procedural Background

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility in Freeland, Michigan. He is presently serving a consecutive sentence string of 7 to 17 years imposed by the Wayne County Circuit Court on October 26, 2011, following Plaintiff's bench trial on charges of armed robbery and felony firearm. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/search (enter

First Name "Jermaine," Last Name "Starks," select Search, select Offender Number 818996) (last visited Oct. 2, 2026).[1]

Plaintiff alleges that on February 3, 2024, while he was housed at the Earnest C. Brooks Correctional Facility in Muskegon, Michigan, he was physically and sexually assaulted by Defendant Corrections Officers Curtis Hoskins and Kyle Wildfong. Plaintiff contends that Defendant Corrections Officer Janica Buchanan is also liable for the assault because she watched it occur and did not intervene. Finally, Plaintiff claims the MDOC retaliated against him for communicating with the Legislative Corrections Ombudsman regarding the February 3, 2024, incident. Plaintiff sues the Defendants in their respective personal and official capacities. Plaintiff seeks damages in the amount of $1,000,000.00. (Compl., ECF No. 1, PageID.5.)

In his unverified complaint, Plaintiff's factual allegations, in their entirety, read as follows:

> 1. On February 3, 2024, around the time between 8:40 a.m. till 9:00 a.m. at "Earnest C. Brooks Correctional Facility" in housing unit "Eastlake," video footage will show I was push[ed] into the staff bathroom by "C/O Hoskins" and "C/O Wildfong" while C/O Buchanan watch[ed] me get sexually assaulted and did not intervene to stop the sexual[] assault."
>
> 2. While in the staff bathroom "C/O Hoskins" and "C/O Wildfong" push me into the bathroom sink which has cause[d] me to have a lower back injury and experie[n]ce severe lower back pain.
>
> 3. Also while in the bathroom "C/O Hoskins put his tongue in my mouth and his hands down in my pants and started pulling on my penis which has cause[d] me to have severe groin pain.

---

[1] This Court takes judicial notice of the information provided by a search of the MDOC's OTIS website with regard to Plaintiff. *See, e.g., United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008); *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

> 4. Also while in the staff bathroom "C/O Wildfong" grab[bed] my penis and started pulling on it, and put his fingers in my anus, which has intensified the bleeding from my anus, and the groin pain.
>
> 5. Also when I was being escorted to segregation in a "High Security Escort Position," "C/O Hoskins" and [non party] "C/O Faber" were pushing my arms up to[o] high where it has cause[d] damage to my left shoulder. I have since been experiencing pain in my left shoulder.[2]
>
> 6. "C/O Buchanan["] fail[ed] to intervene to stop the sexual[] assault from taking place which is a violation of MDOC policy.
>
> 7. I've been experiencing severe groin, lower back, left shoulder and anus pain with intense bleeding from my anus since this incident has taken place.
>
> 8. When I sent a letter to an outside agency (the Legislative Corrections Ombudsman) to investigate the sexual assault incident the MDOC retaliated by giv[ing] me a criminal case.[3]

(Compl., ECF No. 1, PageID.3–4.) Plaintiff supplemented these allegations with a verified declaration:

> 4. On February 3, 2024, Curtis Hoskins and Kyle Wildfong forced me into the staff bathroom and followed me into the same while Janica Buchanan watched. These events were recorded on the cctv cameras in the Eastlake housing unit at the Ernest C. Brooks Correctional Facility.
>
> 5. On February 3, 2024, after being forced into the staff bathroom, Curtis Hoskins and Kyle Wildfong physically and sexually assaulted me while Janica Buchanan

---

[2] The Sixth Circuit Court of Appeals described the same position in *Nash v. Bryce*, 157 F.4th 436, 453 (6th Cir. 2025) as follows: "Nash testified that as he walked through the hallway with Bryce and Turner, he was bent forward because the officers had his arms held up behind his back in an uncomfortable position, so that his face was forced downward towards the floor."

[3] Muskegon County Circuit Court records indicate that Plaintiff entered a *nolo contendere* plea to two charges of attempted assaulting, battering, resisting, obstructing or opposing a person performing his duties in violation of Mich. Comp. Laws § 750.81d(1). Case Details, *State of Michigan v. Starks*, No. 2024-0000005067 (Muskegon Cnty. Cir. Ct.), available at https://micourt.courts.michigan.gov/case-search/ (select Continue, enter "Muskegon" in search box, select 14th Circuit Court, enter Last Name "Starks," enter First Name "Jermaine," select Search, select Case ID "2024-0000005067-FH") (last visited Oct. 2, 2026). In exchange for that plea, two charges of assault of a prison employee, in violation of Mich. Comp. Laws § 750.197c, were dismissed. A court may take judicial notice of the proceedings of other courts, including their docket reports. *Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020).

> watched. Since the restroom facilities are not recorded nor under any surveil[l]ance from the cctv camera system, these events were not captured by the cctv network.
>
> 6. On February 3, 2024, following the assaults inside of the staff restroom, Curtis Hoskins and C/O Farber escorted me to segregation in what is know as the "high security escort position." During this escort, Hoskins and Farber kept pushing my arms up into a position which was painful and injurious.
>
> 7. Contrary to Deffendants' [sic] affidavits, I did not resist nor present in a hostile or combative manner neither was I acting in any fashion which was violative of prison rules or statutory laws.

(Starks Decl., ECF No. 31, PageID.190–191.) Moreover, Plaintiff recharacterized the incident entirely in his brief, suggesting that Defendants Hoskins and Willfong took Plaintiff into the staff bathroom to conduct a search in "an area which they knew to be incapable of being filmed by the cctv cameras." (Pltf's Br., ECF No. 27, PageID.177.)

Defendants experienced and described the incident differently. They have provided verified declarations from each defendant, critical incident reports from involved staff, the assault and battery misconduct report filed against Plaintiff as well as the misconduct hearing report resolving the misconduct charge, the MDOC policy directive regarding prisoner discipline, and the unit surveillance video referenced by Plaintiff in his declaration. (Defts' Summary J. Br. Exhibits A–G, ECF Nos. 22-1 through 22-8.) Defendant Hoskins describes the incident as follows:

> 4. On February 3, 2024, I was assigned to the Eastlake housing unit at LRF.
>
> 5. That morning, at approximately 8:49 a.m., I unlocked the LRF Eastlake Unit Jpay Kiosk dayroom door to let another prisoner into the dayroom. Starks, who was in the dayroom at the time, attempted to leave the dayroom against my instructions, and then stood in the dayroom doorway, becoming argumentative. After Starks refused my direct order to move out of the doorway, I pulled out my handcuffs and ordered Starks to turn around and be placed in restraints. Starks pulled away when I reached for his left arm. I tried to talk to Starks and convince him not to resist so that we did not have to use force to restrain him. As Officer Wildfong approached, I twice reached for Stark's right arm, and in response Starks pulled away and pushed me.

> 5.[4] Officer Wildfong then assisted me in trying to place Starks against the wall in order to handcuff him. Starks then began strongly physically resisting, which caused our momentum to lead us into the staff restroom. Starks was given multiple commands to stop resisting but continued physically resisting our attempts to handcuff him. Additional staff responded, and with their help, Officer Wildfong was able to handcuff Starks.
>
> 6. During this incident, force was only used to restrain Starks after he resisted my efforts to restrain him without force. The force I used to restrain Starks was appropriate. At no time during the incident did I sexually assault Starks or otherwise use any excessive force.

(Hoskins Decl., ECF No. 22-4, PageID.131–132.)

Defendant Wildfong's account is consistent with Defendant Hoskins's account:

> 4. On February 3, 2024, I was assigned to the Eastlake housing unit at LRF.
>
> 5. That morning, at approximately 8:49 AM, I observed Starks resist Officer Hoskins' attempt to place restraints on Starks. As I walked over to assist, Starks pulled away and pushed Officer Hoskins as he again attempted to restrain Starks. I then attempted to place Starks against the wall, which with Starks physical resistance, pushed us into the staff restroom. Starks was given multiple commands to stop resisting but continued physically resisting our attempts to handcuff him. Additional staff responded, and with their help, I was able to restrain Starks with handcuffs.
>
> 6. The force I used to restrain Starks was appropriate. At no time during the incident did I sexually assault Starks or otherwise use any excessive force.

(Wildfong Decl., ECF No. 22-6, PageID.136–137.) Defendant Buchanan's declaration is consistent with those of the other two defendants:

> 4. On February 3, 2024, I was assigned to the Eastlake housing unit at LRF.
>
> 5. That morning, at approximately 8:49 AM, I observed Starks resist Officer Hoskins' attempt to place restraints on Starks. Officer Wildfong then walked over to assist Officer Hoskins. Starks physically resisted as Officers Hoskins and Wildfong attempted to place handcuffs on him, which caused them to enter the staff restroom. I then used my institutional radio to call for backup. At the staff restroom door, I observed Starks continue to resist Officers Hoskins and Wildfong's attempts to restrain him.

[4] The declaration includes two paragraphs numbered "5."

> 6. At no time during the incident did I see any staff sexually assault Starks or otherwise use excessive force.

(Buchanan Decl., ECF No. 22-7, PageID.139–140.)

Not surprisingly, the critical incident reports also support the Defendants' accounts of the incident. About 30 minutes after the incident, Defendant Hoskins wrote a misconduct report against Plaintiff for assault and battery. (Misconduct Rep., ECF No. 22-3, PageID.126.) Administrative Law Judge (ALJ) Jollands conducted the Class I misconduct hearing. The ALJ found as follows:

> ASSAULT AND BATTERY: Per MDOC PD 03.03.105, Attachment A, Assault & Battery is defined as intentional, nonconsensual touching of another person done in anger or with the purpose of abusing or injuring another. Physical resistance or physical interference with an employee. Injury is not necessary, but contact is.
>
> The officer reports prisoner refused to move out of the JPay kiosk room. He was ordered to turn around to be restrained and as the officer reached for his left hand, prisoner turned and pulled away and pushed the officer, causing both himself and C/O Wildfong to place prisoner against the wall. He began actively resisting by twisting and turning and moving away. While trying to restrain prisoner, the bathroom door opened, causing prisoner and both officers to enter the bathroom. Prisoner was ordered to stop resisting as he attempted closed-handed strikes to both officers. Additional staff arrived. Prisoner was secured.
>
> Video supports the misconduct report and shows prisoner begins talking back and forth with C/O Hoskins in the doorway of the kiosk room. C/O Hoskins grabs his cuffs and reaches for Starks left arm. Starks pulls his arm back and away from C/O Hoskins. C/O Hoskins talks into his radio. C/O Hoskins reaches for Starks right arm twice. Starks pulls his arm away then swings his left arm out, pushing C/O Hoskins in the chest. C/O Wildfong and C/O Hoskins grab Starks and go into the staff bathroom. More staff arrive and Starks is brought out of the bathroom in restraints.
>
> I find the evidence sufficiently supports the charge of Assault and Battery. Prisoner logically knows the officer is right there and is trying to restrain him. Given their locations, if he swung his arm out, he logically would risk hitting the officer instead. The swinging was intentional. Prisoner has no authority to touch staff in this manner. I find prisoner's actions of pushing C/O Hoskins was intentional and non-consensual as it is highly unlikely C/O Hoskins would consent to being pushed by prisoner. Pushing the staff person is physically abusive. I find prisoner Starks actions were done intentionally and without consent for the purpose of physically abusing C/O Hoskins. Alternatively, pulling his arms away and twisting and turning

> from staff while they're trying to restrain him supports prisoner physically resisted and interfered with staffs action of restraining prisoner. I find prisoner physically resisted and interfered with staff. Evidence supports the charge.
>
> THE CHARGE IS UPHELD.

(Misconduct Hr'g Rep., ECF No. 22-3, PageID.125.)

The video recording of the incident supports Defendants' descriptions of the incident. The video also blatantly contradicts Plaintiff's description of the event.

## II. The Standards of Review

Defendants contend that Plaintiff's allegations fail, in part, because even accepting them as true they fail to state a claim on which relief may be granted. Defendants contend that any claims that remain are properly dismissed because there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

### 1. Failure to State a Claim

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556

U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

When evaluating whether a complaint states a claim, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The Court is limited in the materials it can properly take into account when deciding whether a complaint states a claim on which relief may be granted:

> As with any Rule 12(b)(6) motion, [courts] begin by accepting as true the complaint's plausible allegations of fact. [*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)]. Then, [courts must] look at the facts "collectively," consulting not just the complaint but also the documents referenced by the complaint and any matter of which we may take judicial notice. *Id.* at 322–23,. Finally, we consider any "plausible opposing inferences." *Id.* at 323.

*Newtyn Partners, LP v. All. Data Sys. Corp.*, 165 F.4th 947, 965 (6th Cir. 2026) (parallel citations omitted).

Federal Rule of Civil Procedure 8 requires that the complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The form complaint Plaintiff submitted provides further direction: "Describe how each defendant is personally involved. Include the names of other persons involved, dates and places."

(Compl., ECF No. 1, PageID.3.) Plaintiff makes sufficient allegations regarding the roles each Defendant played with respect to the February 3, 2024, incident. That is not the case with regard to the subsequent "retaliatory" criminal prosecution. Plaintiff does not share specifically how any of the Defendants were personally involved.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that his Eighth Amendment rights were violated because Defendants Hoskins and Wildfong used excessive force in conducting a search of his person on February 3, 2024, and Defendant Buchanan failed to intervene to stop them. Plaintiff also contends that the MDOC violated his First Amendment rights when it retaliated against them for his communication with the Legislative Corrections Ombudsman regarding the February 3, 2024, incident.

**2. Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). "Putting all of that together, Rule 56 asks 'whether the evidence is so one-sided that one party must prevail

as a matter of law.'" *DeVooght v. City of Warren, Mich.*, 157 F.4th 893, 899 (6th Cir. 2025) (quoting *Anderson*, 477 U.S. at 252).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021). Nonetheless, a court need not accept bare legal conclusions couched as factual allegations or unwarranted factual inferences in resolving a motion for summary judgment. *See, e.g., Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 969 (6th Cir. 2007) ("Even under the generous standard of review for a grant of summary judgment, we do not 'accept as true legal conclusions or unwarranted factual inferences.'").

An opponent of a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id*., at 257. Federal Rule of Civil Procedure 56(c) identifies the types of affirmative evidence contemplated: "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Defendants have provided critical incident reports, misconduct records, verified declarations, and video in support of their motion. Plaintiff has provided a verified declaration in response. (ECF No. 31.)

Even when the Court considers the parties' "verified" statements, the Court need not accept every "verified" statement as true. Federal Rule of Civil Procedure 56 identifies specific

requirements for affidavits or declarations used to support or oppose a motion for summary judgment: they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

It is also important to note that "[e]ven if Rule 56 commands judges to view the facts in the light most favorable to the nonmoving party, it certainly doesn't require [the court] to put blinders on." *DeVooght*, 157 F.4th at 900. It is clear that Plaintiff's version of his encounter with Defendants conflicts with the Defendants' verified accounts, but that does not end the inquiry.

> When . . . the parties tell conflicting stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This applies not only when there is videotape evidence, but whenever the nonmoving party's version is "so blatantly contradicted by objective evidence in the record that it fails to create a genuine issue of material fact for trial." *Coble*, 634 F.3d at 869.

*Booher ex rel. T.W. v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (parallel citation and footnote omitted). Plaintiff's statements are blatantly contradicted by videotape evidence. In considering a motion for summary judgment, the Court may not rely on a party's version of the facts that is "utterly discredited" by the video evidence "such that no reasonable jury could believe him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Rather, the Court should view the facts "in the light depicted by the videotape." *Id*. at 380–81.

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 488 (6th Cir. 2024) (alteration in original) (quoting *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020)). "[W]hen the moving party bears the burden of proof [at trial], their initial summary judgment burden is higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the

evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id*. at 489 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (internal quotation marks omitted). When the moving party does not bear the burden of proof at trial, they may meet their initial burden at summary judgment by "either: (1) submitting 'affirmative evidence that negates an essential element of the nonmoving party's claim'; or (2) demonstrating 'to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.'" *Kava v. Peters*, 450 F. App'x 470, 473 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).The nonmovant must then present "sufficient evidence from which a jury could reasonably find in [their] favor." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (cleaned up).

Plaintiff—the non-moving party—bears the burden of proof at trial. The moving parties, Defendants, must either (1) demonstrate that Plaintiff cannot present evidence to show an essential element of his claim or (2) present evidence that negates an essential element of Plaintiff's claim. As set forth below, with regard to Plaintiff's allegations that suffice to state a claim, the Court finds that Defendants have demonstrated they are entitled to judgment as a matter of law.

## III. Plaintiff Has Failed to State a Claim for First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff claims that after he sent a letter to Legislative Corrections Ombudsman asking for an investigation of the February 3, 2024, incident, the MDOC pursued a criminal case

against him in retaliation. The filing of a complaint with the Ombudsman's office is properly considered to be protected conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (the filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation); *Griffin v. Berghuis*, 563 F. App'x 411 (6th Cir. 2014) (holding that participation in an investigation by the Ombudsman's office was conceded by the defendants to be protected conduct); *Fletcher v. Bradford*, No. 1:18-cv-1160, 2018 WL 5961044, at *3 (W.D. Mich. Nov. 14, 2018) (citing *Griffin* and holding both that the MDOC had conceded that the filing of a complaint was protected conduct and that, because the purpose of the Ombudsman's office was to receive complaints from prisoners, the filing of a complaint with the office is protected conduct as a matter of law).

Moreover, there can be little doubt that the consequences of a criminal prosecution would be considered to be "adverse action." Plaintiff's allegations fall short, however, with regard to the third requirement.

**A. Plaintiff Does not Allege Facts Regarding a Retaliatory Motive**

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on

the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). He has not presented any facts to support his conclusion that the MDOC retaliated against him because he communicated with the Ombudsman regarding the incident. Accordingly, he fails to state a claim.on which relief may be granted.

**B. Sovereign Immunity Protects the MDOC Against Plaintiff's Retaliation Claim**

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); Harrison, 722 F.3d

at 771. Therefore, Plaintiff's claim against the MDOC is properly dismissed for failure to state a claim on which relief may be granted.

**C. Plaintiff Does not Allege Any Facts Implicating the Named Defendants**

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to allege that any of the named Defendants participated in the alleged retaliatory conduct. Thus, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is

entitled to relief"). Accordingly, any intended First Amendment retaliation claims against the named Defendants are properly dismissed for failure to state a claim.

### IV. Plaintiff Has Failed to State Any Claims Against Defendants in Their Respective Official Capacities

Ordinarily, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). However, as noted above, "the MDOC, is not a 'person' within the meaning of § 1983." *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will v. Mich. Dep't of Corr.*, 491 U.S. 58, 71 (1989) for the proposition that "the MDOC is not a person within the meaning of 42 U.S.C. § 1983.") Accordingly, Plaintiff has failed to state a claim against the named Defendants in their respective official capacities.[5]

### V. Defendants are Entitled to Judgment as a Matter of Law on Plaintiff's Eighth Amendment Claim

Plaintiff claims that Defendants Hoskins and Wildfong used excessive force as they physically and sexually assaulted him during a search they conducted in the staff bathroom. Plaintiff claims that Defendant Buchanan is also liable because she watched it happen and failed to intervene.

[5] Moreover, as noted above, regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst*, 465 U.S. at 98–101; *Pugh*, 438 U.S. at 782; *O'Hara*, 24 F.3d at 826. Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern*, 440 U.S. at 341, and the State of Michigan has not consented to civil rights suits in federal court. *Abick* 803 F.2d at 877. Therefore, any claims by Plaintiff against Defendants Hoskins, Wildfong, or Buchanan in their official capacities for money damages would also be barred by sovereign immunity.

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is a subjective component and an objective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official,

it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Furthermore, "[f]ederal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards).

The Sixth Circuit has joined multiple other courts to conclude that incidents of sexual touching coupled with sexual remarks do not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" *See Rafferty*, 915 F.3d at 1095 (citing *Jackson v. Madery,* 158 F. App'x 656, 662 (6th Cir. 2005)); *e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, did not rise to the level of a constitutional violation); *Jackson,* 158 F. App'x at 662 (finding that correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and failed to meet Eighth Amendment standards), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (finding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that

where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006), *partially abrogated by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

However, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit concluded that a prison officer's demand that a female prisoner expose her breasts or masturbate in the officer's presence on six occasions was not "isolated, brief and not severe," and was sufficiently serious to state an Eighth Amendment claim that survives the defense of qualified immunity. *Rafferty*, 915 F.3d at 1095; *see also Seltzer-Bey v. Delo*, 66 F.3d 961, 962–63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment).

Plaintiff's most recent and verified version of the incident is the following:

> 2. The Defendants' affidavit claims, in summary, that they merely searched my person and escorted me to segregation. They claim that they did not sexually assault me and that the actions which they took conformed with prescribed policy directives and operating procedures.
>
> * * *
>
> 4. On February 3, 2024, Curtis Hoskins and Kyle Wildfong forced me into the staff bathroom and followed me into the same while Janica Buchanan watched. These events were recorded on the cctv cameras in the Eastlake housing unit at the Ernest C. Brooks Correctional Facility.
>
> 5. On February 3, 2024, after being forced into the staff bathroom, Curtis Hoskins and Kyle Wildfong physically and sexually assaulted me while Janica Buchanan watched. Since the restroom facilities are not recorded nor under any surveillance from the cctv camera system, these events were not captured by the cctv network.
>
> 6. On February 3, 2024, following the assaults inside the staff restroom, Curtis Hoskins and C/O Farber escorted me to segregation what is known as the "high security escort position". During this escort, Hoskins and Farber kept pushing my arms up into a position which was painful and injurious.

> 7. Contrary to Defendants' affidavits, I did not resist nor present any hostile or combative manner neither was I acting in any fashion which was violative of prison rules or statutory laws.

(Starks Decl., ECF No. 31, PageID.190–191.)

Defendants, on the other hand, aver that Plaintiff resisted Defendant Hoskins' efforts to handcuff Plaintiff. Plaintiff, in the process of resisting, assaulted Defendant Hoskins and pulled Defendants Hoskins and Wildfong into the staff bathroom. Once Plaintiff, Hoskins, and Wildfong were in the bathroom, Defendant Buchanan walked over, held the door open, and stood in the doorway. Seeing the efforts to subdue Plaintiff, she called for assistance. Several additional officers appeared within seconds. Shortly after the additional officers arrived, Plaintiff was escorted in the position he describes out of the unit.

If the record before the Court consisted solely of the declarations of Plaintiff and Defendants, genuine issues of material fact would preclude summary judgment. But, the record also includes a video recording of the incident and the findings of an ALJ from a Class I misconduct proceeding. The video reveals that Plaintiff's account is a work of pure fiction. The ALJ's findings simply reinforce what the video reveals.

The video depicts Plaintiff offering escalating physical resistance to Defendant Hoskins' attempt to handcuff Plaintiff. The video shows exactly what the ALJ found to be true:

> Prisoner logically knows the officer is right there and is trying to restrain him. Given their locations, if he swung his arm out, he logically would risk hitting the officer instead. The swinging was intentional. Prisoner has no authority to touch staff in this manner. I find prisoner's actions of pushing C/O Hoskins was intentional and non-consensual as it is highly unlikely C/O Hoskins would consent to being pushed by prisoner. Pushing the staff person is physically abusive. I find prisoner Starks actions were done intentionally and without consent for the purpose of physically abusing C/O Hoskins. Alternatively, pulling his arms away and twisting and turning from staff while they're trying to restrain him supports prisoner physically resisted and interfered with staffs action of restraining prisoner. I find prisoner physically resisted and interfered with staff.

(Misconduct Hr'g Rep., ECF No. 22-3, PageID.125.) Thus the video and the ALJ blatantly contradict Plaintiff's testimony, offered under penalty of perjury, that he "did not resist nor present any hostile or combative manner neither was I acting in any fashion which was violative of prison rules or statutory laws." (Starks Decl., ECF No. 31, PageID.191.)

Plaintiff, Hoskins, and Wildfong stumble into the bathroom, propelled by Plaintiff's attempt to evade the Defendants. In that regard, the video also blatantly contradicts Plaintiff's contention that Defendants Hoskins and Wildfong took Plaintiff into the staff bathroom to conduct a search. (Pltf's Br., ECF No. 27, PageID.177.)

For a few seconds thereafter, Plaintiff and Defendants Hoskins and Wildfong are out of view of the camera. Defendant Buchanan is present and watching through the open door. Other prisoners are also present, just a few feet away, and watching the incident through the open door. During those seconds, there is no video to contradict Plaintiff's testimony. Plaintiff's testimony regarding those seconds, offered under penalty of perjury, states: "Curtis Hoskins and Kyle Wildfong physically and sexually assaulted me." (Starks Decl., ECF No. 31, PageID.190.)

It is conceptually difficult to view a video that blatantly contradicts and utterly discredits Plaintiff's testimony, offered under penalty of perjury, and then to credit Plaintiff's testimony regarding the few seconds that the video neither supports nor contradicts that testimony. But that is what the Court must do: "view any relevant gaps or uncertainties left by the videos in the light most favorable to [Plaintiff]." *Nash v. Bryce*, 157 F.4th 436, 453 (6th Cir. 2025) (quoting *LaPlante v. City of Battle Creek, Mich.*, 30 F.4th 572, 578 (6th Cir. 2022)) (internal quotation marks omitted).

Although Plaintiff offered some detail regarding the alleged sexual assaults in his unverified complaint, he did not repeat any of that detail when called upon to present evidence

under penalty of perjury. Plaintiff offers no verified facts regarding the nature of the assault or any injuries that he suffered. The critical incident reports indicated that Plaintiff was not injured.

Plaintiff, in stating that Defendants Hoskins and Wildfong physically and sexually assaulted him—the only verified facts he provides in response to the summary judgment motion—offers only unsupported legal conclusions. *See, e.g., Willoughby v. Harger*, No. 2:20-cv-620, 2020 WL 729735, at *5 (noting that simply alleging that a search was a sexual assault without more facts is a "legal conclusion"); *Carroll v. Lamour*, No. 20-10879, 2021 WL 1207359, at *2 (E.D.Mich. Mar. 31, 2021) (noting that whether "Defendants 'did assault [Plaintiff]'" was a "legal conclusion"); *Andrews v. Flaiz*, No. 1:14 CV 623, 2014 WL 4925044, at *11 (N.D. Ohio, Sept. 30, 2014) (finding that plaintiff's claim that officer physically assaulted him, without any factual allegations to suggest what actions to officer took to "assault" plaintiff was a legal conclusion); *R.C. v. Fayette Cnty. Bd. of Educ.*, No. 5:09-102-JMH, 2009 WL 3415350, at *3 (E.D. Ky. Oct. 15, 2009) (court determined that averring that an assault occurred, without more, is a legal conclusion even though the plaintiff argued it was a common word). "Even under the generous standard of review for a grant of summary judgment, we do not 'accept as true legal conclusions . . . .'" *Yanovich*, 255 F. App'x at 969.

As noted above, "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell*, 759 F.3d at 580. Moreover, even a common pat-down search is necessarily intrusive, even sexually intrusive. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court noted the following was an "apt description" of such a search: " '(T)he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet.'" *Id*. at

17 n.13. Plaintiff, in simply stating that Defendants physically and sexually assaulted him, even accepting that allegation as true, does not present sufficient facts to demonstrate an Eighth Amendment violation, particularly where the "assaultive" conduct is a response to Plaintiff's evasion from and assault of Defendant Hoskins.

Plaintiff next complains that his Eighth Amendment rights were violated when he was held in a high security escort position on the way out of the unit. Based solely on the video record of Plaintiff's resistance to being handcuffed and his assault of Defendant Hoskins, the Court concludes that there is no genuine issue of material fact regarding this claim. Plaintiff offers no record evidence to support his claim that the use of the high security escort position was malicious and sadistic. Defendants have provided substantial testimony to support the conclusion that the high security escort position was used "in a good-faith effort to maintain or restore discipline." Accordingly, the Court concludes that Defendants are entitled to judgment as a matter of law.

Finally, Plaintiff complains that Defendant Buchanan failed to intervene on his behalf to stop the alleged assaults in the staff restroom. As stated above, however, the Court concludes that Plaintiff has not presented facts supporting the existence of an Eighth Amendment violation that would require Defendant Buchanan's intervention. Defendant Buchanan is entitled to judgment as a matter of law.

**Conclusion**

For the reasons stated above, the Court will grant Defendants' motion for summary judgment. The Court will enter an order and judgment consistent with this opinion.

Dated: October 22, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge